Joseph G. Pia (9945)
Chrystal Mancuso-Smith (11153)
Pia Anderson Dorius Reynard & Moss
222 S. Main Street, Suite 1830
Salt Lake City, UT 84101
Tel. (801)350-9000
Fax. (801)350-9010
Joe.pia@padrm.com
Cmancuso@padrm.com

Murphy S. Klasing (pro hac pending)
Weycer, Kaplan, Pulaski & Zuber, P.C.
11 Greenway Plaza, Suite 1400
Houston, Texas  77046
(713) 961-9045
(713) 961-5341 Fax
mklasing@wkpz.com

*Attorneys for Plaintiff Fouzi Al-Fouzan*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | | |
|---|---|---|
| **FOUZI AL-FOUZAN** § | | |
|     **Plaintiff,** § | | **COMPLAINT** |
| § | | |
| v. § | | **Demand for jury trial** |
| § | | |
| **ACTIVECARE, INC., JAMES JOSEPH** § | | |
| **DALTON, ADP  MANAGEMENT** § | | **Civil No. _____** |
| **CORPORATION, and 4G BIOMETRICS,** § | | |
| **LLC,** § | | |
|     **Defendants.** § | | |

1

## COMPLAINT

Plaintiff FOUZI AL-FOUZAN, by and through counsel of record, files this Complaint against Defendants ACTIVECARE, INC., JAMES JOSEPH DALTON, ADP MANAGEMENT CORPORATION, and 4G BIOMETRICS, LLC, hereinafter collectively referred to as "Defendants." and alleges as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is proper under 28 U.S.C. § 1332(a)(2) because there is complete diversity among the parties as this is a suit between a foreign citizen and U.S. citizens, and the amount in controversy is in excess of $1,000,000, and thus exceeds $75,000, exclusive of interests and costs..

2. Jurisdiction is also proper because Plaintiff, ActiveCare, and ADP irrevocably consented to the jurisdiction of the courts of the State of Utah and of any federal court located in Utah in connection with any action or proceeding arising out of or relating to the Agreement subject of this lawsuit.  4G is a wholly owned subsidiary of ActiveCare.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) in that all Defendants are either residents of Utah or resides and/or maintains its principal place of business in this district.  *See also* 28 U.S.C. §§ 125.

### DEMAND FOR JURY TRIAL

4. Plaintiff hereby demands a jury trial as to all issues or claims so triable.

### THE PARTIES

5. Plaintiff FOUZI AL-FOUZAN, an individual, is a citizen of Kuwait.  Plaintiff is a signatory to the Agreement subject of this lawsuit.

6. Defendant ACTIVECARE, INC. ("ActiveCare") is a corporation incorporated under the laws of Delaware with its principal place of business at 1365 West Business Park Drive, Orem, Utah County, Utah 84058. ActiveCare's registered agent for service of process is DJP Corporate Services Salt Lake, 111 East Broadway, Suite 900, Salt Lake City, UT 84111. ActiveCare is a signatory to the Agreement subject of this lawsuit.

7. Defendant ADP MANAGEMENT CORPORATION ("ADP") is a corporation incorporated under the laws of Utah with its principal place of business at 1401 N. 1075 West Ste. #240, Farmington, Davis County, Utah 84025. ADP's registered agent for service of process is David G. Derrick, located at 36 E. Canyon View, Farmington, Utah 84025. ADP is a signatory to the Agreement subject of this lawsuit.

8. Defendant JAMES J. DALTON ("Dalton") is an individual who resides at 3133 Mountain Ridge Ct., Park City, Utah 84060.

9. Defendant 4G BIOMETRICS, LLC ("4G") is a wholly owned subsidiary of ActiveCare and a Texas limited liability company with its principal place of business in Lewisville, Texas. It can be served by serving its registered agent for service of process: Darrell Glenn Meador, 2608 Queen Margaret Drive, Lewisville, Texas 75056.

10. Plaintiff requests that summons be issued so that service upon Defendants may be perfected according to law by way of private process server.

## STATEMENT OF CLAIM

11. On September 6, 2010, ActiveCare, ADP, and Plaintiff signed an Escrow/Subscription Agreement (hereinafter the "Agreement") whereby Plaintiff invested one (1) million dollars in ActiveCare in exchange for one (1) million Common Shares of ActiveCare.

Section 2(b) of the Agreement states, in relevant part, as follows:

> At the end of six months from [September 6, 2010], [Plaintiff] has the right to require [ADP] to either repurchase the Common Stock at a price equal to $1.00 per share or reset the purchase price to the closing price as of the 6 month anniversary date and issue additional shares to compensate for the reset purchase price.

Section 2(b) will be referred to herein as Plaintiff's "Repurchase Option."

12. Also of relevance is Section 8(a) of the Agreement, which states in relevant part that the Agreement "may be modified only by a written instrument duly executed by the party to be charged." The Agreement has not been modified in accordance with Section 8(a).

13. Pursuant to the terms and conditions of the Agreement, on or about September 8, 2010, Plaintiff invested one (1) million dollars in ActiveCare and received one (1) million Common Shares of ActiveCare.

14. At least six (6) months after the Agreement was signed, Plaintiff notified Defendants of his decision to exercise his Repurchase Option.

15. Upon request, Plaintiff allowed Defendants additional time before exercising his Repurchase Option so that Defendants could improve their financial condition and prove to Plaintiff that his investment would be profitable.

16. Despite the additional time allowed, Plaintiff did not see the results he had hoped for and, as such, memorialized his decision to exercise his Repurchase Option in an e-mail to Dalton of ActiveCare on December 6, 2011. In response, Dalton of ActiveCare represented that he would return Plaintiff's investment via wire transfer.

17. Despite repeated demands, ActiveCare did not return Plaintiff's investment as promised by Dalton, nor did ADP repurchase the Common Stock as required by the Repurchase Option.

18. At first, Defendants represented to Plaintiff that they intended to comply with their obligations under the Agreement but needed additional time. Defendants then spent several months trying to convince Plaintiff to accept one of many investment proposals presented to him and invest additional funds into ActiveCare. During these presentations, Defendants repeatedly reassured Plaintiff of ActiveCare's financial condition and positive outlook.

19. Specifically, ActiveCare, ADP and/or Dalton made the following representations to Plaintiff:

(a) On January 21, 2012, Dalton of ActiveCare sent Plaintiff correspondence regarding ActiveCare's process of raising money for two (2) acquisitions so that he could "understand the synergies that they will create with ActiveCare" and the "game changers" for ActiveCare. (upon information and belief, one of these acquisitions was for 4G).

(b) On February 3, 2012, Dalton of ActiveCare sent Plaintiff correspondence in which Dalton commented upon the expense and undesirability of litigating the Agreement. Dalton also stated he was scrambling to meet Plaintiff's request "as the investment capital has been deployed" and he wanted to make sure that he could abide by any plan or date he agreed to. He also noted that his word has been what he has spent his professional life living by and nothing was more important to him. Finally, he gave Plaintiff his word that "the obligation in [his] contract will be met" but that he needed until February 15, 2012 to draft a plan "that will make all parties much happier" and to resolve the matter amicably.

(c)     On March 15, 2012, Dalton of ActiveCare represented to Plaintiff that his investment would be "backed by the assets of [ActiveCare], with nearly $25M USD spent to get to where it is today, and no other secured debt holders in line."

(d)     On May 15, 2012, Dalton of ActiveCare wrote a letter to Plaintiff regarding the business plan proposals presented to Plaintiff and ActiveCare's financial condition. In the letter, Dalton represents that ActiveCare was estimated to add 1,357 new members by the end of June 2012 and 4,300 members by the end of 2012, and said figures could easily triple with proper funding. Dalton also represented that the signing of six (6) Third Party Administrators gave ActiveCare the opportunity to grow the company into producing $330 million in recurring annual revenues. He stated his belief that ActiveCare's worth will exceed $1 billion or in excess of $10 per share. Dalton encouraged Plaintiff that, though he and his partner David Derrick were running short on needed capital and ActiveCare was not ready for a financial institution type of partner, Plaintiff would make an excellent partner to build ActiveCare. He then represented that, after already receiving a return of his $1 million investment, Plaintiff would make $10,900,000 in profits if the stock price increases to $2 per share in 2013.

20.    As late as September of 2012, Plaintiff was meeting with Dalton and other representatives of ActiveCare and 4G to discuss the proposed terms of the anticipated $1M and $1.5M loan agreements and promissory notes under which Plaintiff's $1M original investment would be converted into a two-year loan. The agreements and notes were never executed.

21.    4G is an operating wholly owned subsidiary of ActiveCare and, upon information and belief, may have obtained some or all of the investment funds originally invested by Plaintiff.

22. The representations detailed above, among others, were false, and were made for the purpose of inducing Plaintiff to refrain from exercising his legal and equitable remedies due to ActiveCare and ADP's breach of the Repurchase Option of the Agreement.

## COUNT 1

## BREACH OF CONTRACT (Against All Defendants)

23. Plaintiff incorporates by reference all of the allegations of this Complaint as if fully stated herein.

24. The Agreement, entered into between Plaintiff, ActiveCare, and ADP, was a contract.

25. Plaintiff performed his obligations as required by the terms and agreements of the Agreement.

26. More than six (6) months after the Agreement was entered into, Plaintiff exercised his right to require ADP to repurchase the Common Stock, as permitted by Section 2(b) of the Agreemen

27. ActiveCare and ADP breached the Agreement by failing to repurchase the Common Stock within a reasonable time, as required by Section 2(b) of the Agreement and Utah law.

28. The failure of Defendants to repurchase the Common Stock within a reasonable time is a material breach of ActiveCare and ADP's contractual duties to Plaintiff.

29. ActiveCare and ADP are and remain indebted to Plaintiff for the principal amount of One Million and 00/100 Dollars ($1,000,000.00), exclusive of interest and costs of court as sought herein.

## COUNT 2

## IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (Against All Defendants)

30. Plaintiff incorporates by reference all of the allegations of this Complaint as if fully stated herein.

31. The Agreement contained an unwritten or implied promise that the parties would deal with each other fairly and in good faith.

32. Plaintiff, ActiveCare, and ADP promised not to intentionally do anything to injure each other's right to receive the benefits of the Agreement.

33. ActiveCare and ADP violated this unwritten or implied promise by failing to repurchase the Common Stock, as required by Section 2(b) of the Agreement.

34. ActiveCare and ADP also violated this unwritten or implied promise by misrepresenting the financial condition of ActiveCare after Plaintiff exercised his right to require ADP to either repurchase the Common Stock or reset the purchase price and issue additional shares to compensate for the reset purchase price, as permitted by Section 2(b) of the Agreement.

35. ActiveCare and ADP also violated this unwritten or implied promise by engaging in "stall tactics" and by repeatedly suggesting to Plaintiff that ActiveCare and ADP intended to fulfill their contractual obligations under Section 2(b) of the Agreement, when in fact ActiveCare and ADP had no intentions of fulfilling said obligations.

## COUNT 3

### PROMISSORY ESTOPPEL (Against All Defendants)

36. In the alternative, Plaintiff also asserts a cause of action for promissory estoppel.

37. Plaintiff incorporates by reference all of the allegations of this Complaint as if fully stated herein.

38. Defendants promised that ADP would repurchase the Common Stock at a price equal to $1.00 per share at the end of six months from the date of the Agreement if Plaintiff required it.

39. Plaintiff acted with prudence and in reasonable reliance upon the promise made by Defendants.

40. Defendants knew that Plaintiff had relied on the promise, which Defendants should have reasonably expected to induce action or forbearance on the part of Plaintiff.

41. Defendants were aware of all material facts at the time the promise was made.

42. Plaintiff relied on the promise by entering into the Agreement and investing $1 million into ActiveCare, and the reliance resulted in a loss to Plaintiff.

## COUNT 4

### QUANTUM MERUIT (Against All Defendants)

43. In the alternative, Plaintiff also asserts a cause of action for quantum meruit.

44. Plaintiff incorporates by reference all of the allegations of this Complaint as if fully stated herein.

45. Plaintiff conferred a benefit that Defendants received by executing the Agreement and investing into ActiveCare.

46. Defendants had an appreciation or knowledge of the benefit conferred by Plaintiff.

47. Given the circumstances, it would be unjust and inequitable for the Defendants to retain the benefit conferred by Plaintiff without payment of its value.

## COUNT 5

## FRAUD (Against All Defendants)

48. Plaintiff incorporates by reference all of the allegations of this Complaint as if fully stated herein.

49. For all of the reasons in Counts 2, 3 and 4, above, Defendants are also liable to Plaintiff for the fraud described above and for all damages and equitable remedies to which he may be entitled thereby.

50. Defendants made numerous representations to Plaintiff, as detailed in Paragraphs 12 - 17.

51. The representations concerned then-presently existing material facts.

52. The representations were false.

53. Defendants had knowledge of the falsity or made the representations recklessly, knowing they had insufficient knowledge upon which to base their representations.

54. Defendants intended that Plaintiff act upon the representations.

55. Plaintiff reasonably and with ignorance of the falsities relied upon the representations.

56. Plaintiff suffered consequent and proximate injury and damage as a result.

## COUNT 6

## ATTORNEYS' FEES AND INTEREST

57. Plaintiff is entitled to and is seeking to recover reasonable and necessary attorney fees under Utah Code Ann. § 78B-5-825 to the extent Defendants' defense to this action is without merit and not brought or asserted in good faith, and based upon principles of equity and justice.

58. Plaintiff presented its claims to Defendants and they were rejected. Plaintiff then retained counsel to prosecute these claims.

59. Plaintiff is also entitled to and is seeking to recover pre-judgment and post-judgment interest at the maximum rate as permitted by the agreements with Defendants and/or by law, whichever is greater.

## CONDITIONS PRECEDENT

60. All conditions precedent to Plaintiff's claims for relief have occurred or have been performed.

## PRAYER

WHEREFORE, Plaintiff demands judgment in his favor and against the Defendants, jointly and severally to the extent allowed by law, as follows:

1. For all forms of damages as may be allowed, in such sums as may be proven at trial;

2.	For all equitable remedies as may be allowed, in the form of, without limitation, disgorgement, and restitution;

3.	For each and every remedy allowed by statute;

4.	For Actual or Expectancy Damages in the amount of $1,000,000.00;

5.	For Consequential damages in an amount to be proven at trial;

6.	For Exemplary damages in an amount to be proven at trial

7.	For pre- and post-judgment interest at the maximum rate allowed by law;

8.	For all of Plaintiff's reasonable attorneys' fees, costs, and expenses as may be allowed at law, in equity, by contract, statute, rule, inherent power of the Court or otherwise;

9.	For all other relief to which the proof may show entitled as allowed by Rule 54(c); and

10.	For all such other and further relief as the Court deems just, equitable and proper.

Dated this 20th day of May, 2015.

PIA ANDERSON DORIUS REYNARD & MOSS, LLC

/s/ Joseph G. Pia
Joseph G. Pia
Chrystal Mancuso-Smith
*Attorneys for Plaintiff Fouzi Al-Fouzan*