IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FOUZI AL-FOUZAN,<br><br>                  Plaintiff,<br>v.<br><br>ACTIVECARE, INC.; JAMES JOSEPH DALTON; ADP MANAGEMENT CORPORATION; and 4G BIOMETRICS, LLC,<br><br>                  Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cv-373-BCW<br><br>Chief Magistrate Judge Brooke Wells |

Pursuant to 28 U.S.C. § 636(c), the parties have consented to having Magistrate Judge Brooke C. Wells conduct all proceedings in this case.[1] Before the Court are two motions, (1) Defendants' Motion to Dismiss for Failure to State a Claim (First Motion to Dismiss)[2] and (2) Defendant's Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss").[3]

After the First Motion to Dismiss was filed, Plaintiff amended his complaint.[4] Oral argument was held on these motions on January 20, 2016 at which time Mr. Murphy S. Klasing appeared on behalf of Plaintiff Fouzi Al-Fouzan ("Plaintiff") and Mr. Erik A. Christiansen represented Defendants. At the conclusion of oral argument, the parties and Court agreed on the record that the First Motion to Dismiss[5] was moot due to the filing of the amended complaint.

---

[1] Docket no. 18.

[2] Docket no. 13.

[3] Docket no. 21.

[4] Docket no. 19.

[5] Docket no. 13.

After taking the second motion to dismiss under advisement at the conclusion of oral argument,[6] the Court has further considered the Amended Complaint, arguments of counsel made both at oral argument and in their briefs, and relevant case law.  For the reasons set forth more fully below, the Court GRANTS IN PART Defendants' Motion to Dismiss.[7]

## BACKGROUND

In short, this is an action to recover damages resulting from Plaintiff's one million dollar investment with Defendants ActiveCare and ADP and/or associated agents and companies.  On September 6, 2010, Plaintiff, a citizen of Kuwait entered in a "Escrow/Subscription Agreement" with Defendants ActiveCare and ADP.  Under the agreement, Plaintiff invested one million dollars in ActiveCare, a corporation with a principal place of business in Orem, Utah, in exchange for one million Common Shares of ActiveCare.

Section 2(b) of the Agreement states in relevant part:

> At the end of six months from [September 6, 2010][Plaintiff] has the right to require [ADP] to either repurchase the Common Stock at a price equal to $1.00 per share or reset the purchase price to the closing price as of the 6 month anniversary date and issue additional shares to compensate for the reset purchase price.

At the end of six months, Plaintiff notified Defendants that he had elected to exercise Section 2(b) of the agreement.  Through Defendant Dalton mostly, Plaintiff was encouraged to allow additional time for ActiveCare to improve its financial condition before exercising his option.  According to the allegations in the Amended Complaint, which the Court takes as true at this stage of the litigation, "[d]espite the additional time allowed, Plaintiff did not see the results he had hoped for, and as such reiterated his decision to exercise Section 2(b) of the Agreement in

---

[6] Docket no 31.

[7] Docket no. 21.

an email to [Defendant] Dalton on December 6, 2011."[8] In response, Dalton represented that Plaintiff's investment would be returned via wire transfer. Further, "[d]espite repeated demands, ActiveCare did not return Plaintiff's investment as promised by Dalton, nor did ADP repurchase the Common Stock as required by the Repurchase Option."[9] "At first, Defendants represented to Plaintiff that they intended to comply with their obligations under the Agreement but needed additional time. Defendants then spent several months trying to convince Plaintiff to accept one of many investment proposals presented to him and invest additional funds into ActiveCare and/or 4G."[10] Plaintiff's Complaint then goes on to detail the exchanges between Plaintiff and Defendants that occurred between 2012 and 2013.[11] In the end, Plaintiff alleges "[t]he representations of Defendants detailed above, among others, were false, and were made for the purpose of inducing Plaintiff to refrain from exercising his legal and equitable remedies due to ActiveCare and ADP's breach of the Repurchase Option of the Agreement. As a result, Plaintiff sustained damages including without limitation the loss of his investment and a reverse stock split further devaluing his investment."[12]

## LEGAL STANDARD

To withstand a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'"[13] There are two working principles under this standard. First, "…a court must accept as true all of the allegations contained in a complaint,"

---

[8] Am. Compl. at ¶ 16.

[9] *Id.* at ¶ 17.

[10] *Id.* at ¶ 18.

[11] *See id.* at ¶¶ 19-21.

[12] *Id.* at ¶ 22.

[13] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)(quoting *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007)).

but need not accept legal conclusions.[14]  "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[15]  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."[16]

In essence, a plaintiff must offer sufficient factual allegations to "raise a right to relief above the speculative level."[17] "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[18]  Therefore, in assessing a motion to dismiss, a court should disregard conclusory statements of law, even if they are couched as facts, and then consider whether the remaining specific factual allegations, if presumed to be true, plausibly provide a claim that the defendant is liable.

## ANALYSIS

Defendants' Motion to Dismiss seeks dismissal of counts Three (Fraud), Four (Conspiracy to Commit Fraud), Five (Attorneys' Fees and Interest), and Six ("Alter Ego") of the Amended Complaint.

### A. Fraud (Count Three)

Defendants argue Plaintiff's fraud claim should be dismissed because it is (1) barred by the statute of limitations, (2) barred by the economic loss rule and (3) not stated with the requisite particularity.

---

[14] *Id*. (internal quotations omitted).

[15] *Id*. (quoting *Twombly*, at 555).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[17] *Twombly*, at 555.

[18] *Iqbal,* 556 U.S. at 679.

**1.  Statute of Limitations**

Under Utah law, a claim for "relief on the grounds of fraud or mistake" must be brought within three years "except that cause does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake."[19]  "As a general rule, a statute of limitations begins to run 'upon the happening of the last event necessary to complete the cause of action.'"[20]  In cases where the relevant statute of limitations contains a statutory exception such as the fraud statute, courts examine "when a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action[.] [T]he statutory limitations period begins to run and a plaintiff who desires to file a claim must do so within the time specified in the statute.  Otherwise, the claim will be barred."[21]  In other words, "the statute of limitations [begins] running from the date a plaintiff either discovered or should have discovered his or her claim."[22]

In the instant case, Plaintiff filed this lawsuit on May 21, 2015.  Therefore, Plaintiff had to have actual or constructive knowledge of the relevant facts forming the basis of the cause of action on or before May 21, 2012.  According to Defendant, Plaintiff's claim should be barred because Plaintiff had the requisite knowledge of the alleged fraud well before May 21, 2012.  Defendant argues

> Al-Fouzan's Amended Complaint reveals that before May 21, 2012, Al-Fouzan had allegedly asked for his stock to be repurchased at least two times, and Defendants had allegedly represented it would be repurchased.  Then, after Defendants allegedly represented that the stock would be repurchased, at least five months passed, during which time Defendants did not repurchase the stock.  Therefore, Al-Fouzan had admitted that he had actual or constructive knowledge

---

[19] Utah Code Ann. § 78B-2-305.

[20] *Russell Packard Development Inc.*, 2005 UT 14 ¶ 20, 108 P.3d 741, 746 (Utah 2005)(quoting *Myers v. McDonald*, 635 P.2d 84, 86  (Utah 1981).

[21] *Id*. at ¶ 22.

[22] *Id*. at ¶ 23.

of the relevant facts forming the basis of his cause of action for fraud...before May 21, 2012.[23]

In response, Plaintiff argues that he did not discover that Defendants had no intentions of fulfilling their promises and/or representations until after May 21, 2012 because Defendants continued to engage in "stall tactics" by repeatedly suggesting to Plaintiff that they intended to fulfill their promises and/or representations until long after May 21, 2012. Plaintiff further argues that he was not aware of the fraud until May 16, 2013 when ActiveCare devalued his stock by 90% through a reverse stock split.

Upon review of the allegations contained in the Complaint which again are taken as true with all reasonable inferences drawn therefrom viewed in a light most favorable to the plaintiff as the nonmoving party,[24] the Court finds Plaintiff's arguments to be well taken. Plaintiff's actions were reasonable in light of the circumstances presented in the Amended Complaint. Based on Defendants' continued assurances that Plaintiff's investment was secure, the Court finds Plaintiff acted reasonably in not acting sooner in pursing his claims and his claims should not be barred based upon when Defendants believe Plaintiff should have known a claim for fraud had accrued.[25] This finding seems to be in line with a policy consideration outlined in the *Russell Packard* case where the Utah Supreme Court noted "[i]f we were looking only to whether a plaintiff theoretically could have brought a suit before the limitations period expired without looking to the relative reasonableness or unreasonableness of that action under the

---

[23] Docket no. 21.

[24] *See Russell Packard Development, Inc.* at ¶ 3.

[25] At oral argument, counsel for Defendants argued that even assuming there was a sufficient basis to toll the fraud claim, the claim should not be tolled against all Defendants in this case. The Court is unpersuaded by this argument based upon Mr. Dalton's alleged role in all of the organizations that are named Defendants. In addition, although the Plaintiff only signed an agreement with ActiveCare and ADP, it is clear from the Amended Complaint that all Defendants may have been involved at some point in communicating with Plaintiff regarding his investment. If at some point in the future of this litigation, it becomes apparent that some Defendants were not involved in these communications, then an appropriate motion should be filed but at this early stage in the litigation the Court is hesitant to bar Plaintiff's against particular Defendants.

circumstances, we would reward a Defendant's fraudulent or deceptive misbehavior by depriving an innocent plaintiff of a reasonable period in which to act."[26]   Therefore, the Court finds Plaintiff's claims for fraud are within the three-year statute of limitations.

### 2. Economic Loss Rule

Next, Defendants argue that because fraud is a tort claim it is barred from being asserted against ADP and ActiveCare because those parties have a contract with Plaintiff.  Under the economic loss rule, "[o]nce a legally binding contract is agreed upon, the law recognizes that the parties to that agreement have forsaken the remedies provided in tort law and agreed rather to have their legal relationship governed by the obligations, duties and remedies set out in the contract."[27]

On the other hand, Plaintiff argues that his fraud claim should survive in spite of the economic loss rule because his fraud claim is based upon duties created by representations made subsequent to the execution of the Agreement, as detailed in Paragraphs 16 and 19 of the Amended Complaint.  Upon review and consideration of the Plaintiff's arguments, the Court agrees that Plaintiff has asserted a proper tort law claim based upon Defendants' conduct post-agreement.  Therefore, the Court will not dismiss Plaintiff's Amended Complaint based upon the economic loss rule.

### 3. Particularity

Rule 9(b) of the Federal Rules of Civil Procedure states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  In Utah, to allege a claim of fraud, a Plaintiff must demonstrate

---

[26] *Id*. at ¶ 28.

[27] *Anapoell v. Am. Express Bus. Fin. Corp.*, No. 2:07-cv-198-TC, 2007 WL 4270548 at *6-7 (D. Utah Nov. 30, 2007)(unpublished).

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of the falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[28]

In addition, "a cause of action for fraud against multiple defendants must 'supply...information regarding [each defendant's] personal participation in fraud.'"[29] According to Defendant, "Al-Fouzan's claim is not stated with particularity because [he] does not supply information regarding each defendant's personal participation in the fraud. For example, in paragraphs 19(g)-19(j) contain allegations that can be traced to "ActiveCare, ADP, 4G and/or Dalton." Then, paragraph 21 attempts to remedy this by stating "[w]ith respect to the representations of Dalton detailed above, Dalton made the representations on behalf of ActiveCare and/or ADP and/or 4G and/or himself, individually."

Here, Plaintiff's Amended Complaint fails to allege the elements of a fraud claim with the particularity the rules require. First, the Court agrees with Defendants' arguments that Plaintiff has not provided enough information as to each Defendant and what capacity each acted in. This is especially true with Mr. Dalton. Plaintiff's assertion in paragraph 21 does not plead enough particularity to pass muster. In addition, Plaintiff's Amended Complaint does not clearly allege each element of fraud required under Utah law and/or contain facts that are sufficiently tied to the elements.

Therefore, the Court will dismiss Plaintiff's fraud allegations for lack of the requisite particularity required under the Federal Rules of Civil Procedure. However, at oral argument, it was apparent that counsel for both sides would not be opposed to allowing Plaintiff to amend his

---

[28] *Fidelity Nat'l Title Ins. Co. v. Worthington*, 2015 UT App 19, ¶ 10, 344 P.3d 156, 159 (Utah App 2015).

[29] *Id*. at ¶ 12.

complaint on particularity grounds.  Therefore, the Amended Complaint will be dismissed *without prejudice* giving Plaintiff an opportunity to amend his Complaint.

### B. Conspiracy to Commit Fraud (Count Four)

Defendants argue that Plaintiff's conspiracy to commit fraud claim is dependent upon whether the fraud claim is allowed to go forward and "even if the Court does not dismiss Al-Fouzan's fraud claim, his conspiracy claim should be dismissed for the independent reason that he fails to plead the necessary elements."[30]

In Utah, "[a] claim for civil conspiracy must allege the following elements: '(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[31]

Here, as noted above, the Court will dismiss Plaintiff's fraud claim without prejudice but will allow Plaintiff an opportunity to amend his fraud claim in order to plead it with more particularity.  Similarly, upon review of the Amended Complaint, the Court finds Defendants' arguments with regard to the Conspiracy to Commit Fraud claim to have merit.  Plaintiff has stated a plausible claim for relief but has not pleaded the requisite elements in this Complaint to constitute a valid claim for conspiracy to commit fraud.  Therefore, amendment to the conspiracy claim would not be futile.  Thus, the Court will grant Plaintiff leave to amend his Complaint based upon the arguments raised by Defendants.

### C.   Attorneys' Fees and Interest & Alter Ego (Counts Five and Six)

Defendants argue that Counts Five and Six of the Amended Complaint should be dismissed because Attorneys' Fees and Alter Ego are not stand alone claims under Utah law.  In

---

[30] Docket no. 24.
[31]

addition, Defendants argue that with regard to Alter Ego, Plaintiff has not pleaded sufficient facts to withstand a claim for alter ego because Plaintiff's Complaint merely states "Plaintiff would further show that 4G (predecessor in interest to and/or now known as ActiveCare Biometrics) and ActiveCare were operating as alter egos for the purposes of perpetrating the above described fraud and conspiracy to commit fraud."[32]  At oral argument, Plaintiff conceded that these claims were mostly plead to put Plaintiff on notice.

The Court agrees with Defendant to the extent that these claims ought to be dismissed as separate causes of action because they are legal theories and/or remedies not valid causes of action on their own.  However, to the extent Plaintiff relies on alter ego as a theory for recovery against Defendants under the valid causes of action, Plaintiff is free to amend his complaint to put Defendants on notice of recovery based on that theory.  Likewise, Plaintiffs' claim for attorney fees is not a stand-alone cause of action.  If Plaintiff believes attorney fees to be recoverable based on valid causes of action, for example for Plaintiff's breach of contract claim, then Plaintiff is granted leave to amend his complaint to properly plead attorney's fees under his "Prayer for Relief."  Therefore, the Court DISMISSES Counts Five and Six of the Amended Complaint as separate causes of action.

## CONCLUSION & ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Defendants' Motion to Dismiss[33] is DEEMED MOOT.

(2) Defendants' Motion to Dismiss[34] is GRANTED IN PART.

---

[32] Complaint at ¶ 53.

[33] Docket no. 13.

[34] Docket no. 21.

    a. Count Three of the Amended Complaint (fraud) is DISMISSED WITHOUT PREJUDICE.  Plaintiff is granted leave to file a second amended complaint that pleads with more particularity the events that constitute the fraud alleged and any elements essential to this cause of action in this count.

    b. Count Four (conspiracy to commit fraud) is DISMISSED WITHOUT PREJUDICE.  Plaintiff is granted leave to file a second amended complaint that pleads with more particularity the events that constitute the conspiracy to commit fraud.

    c. Count Five (attorneys' fees and interest) is DISMISSED as a separate cause of action.  If Plaintiff is seeking attorney's fees they are to be plead as a "prayer for relief" and not as a separate "count."

    d. Count Six (alter ego) is DISMISSED as a separate cause of action but may be incorporated into Plaintiff's theories of recovery under other valid causes of action.

(3) Plaintiff shall have fourteen (14) days from the date this order was issued in order to file an amended complaint that is in accordance with this Order.

(4) An initial pre-trial conference will be held for scheduling purposes on **April 20, 2016 at 11:00 AM** before Magistrate Judge Evelyn J. Furse.

**IT IS SO ORDERED.**

    DATED this 21 March 2016.

                                        Brooke C. Wells
                                        Chief United States Magistrate Judge