IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FOUZI AL-FOUZAN,<br><br>              Plaintiff,<br>v.<br><br>ACTIVE CARE, INC, et al.,<br><br>              Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>Case No. 2:15-cv-373-BCW<br><br>Magistrate Judge Brooke Wells |

The parties consented to the jurisdiction of the undersigned pursuant to 636(c).[1] In March 2016 Judge Wells granted in part Defendants' prior Motion to Dismiss but allowed plaintiff to amend his complaint.[2] Now, before the Court is Defendants' ActiveCare, Inc. ("ActiveCare"), James Joseph Dalton ("Dalton"), ADP Management Corp. ("ADP"), and 4G Biometrics, LLC ("4G") (collectively, "Defendants") motion to dismiss certain of Plaintiff Fouzi Al-Fouzan's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

Specifically, Defendants argue that certain claims are barred by the economic loss rule, other claims are barred because either no misrepresentations were made or, if misrepresentations were made the Plaintiff did not rely on them. Defendants further argue that even if Plaintiff relied on misrepresentations, he has no independent damages, besides that which he can recover under the contract. For the reasons stated more fully within, the Court will GRANT IN PART AND DENY IN PART Defendants' Motion to Dismiss.[3]

---

[1] Docket no. 18.

[2] Docket no. 32.

[3] Docket no. 38.

## BACKGROUND

In short, this is an action to recover damages resulting from Plaintiff's one million dollar investment with Defendants. Plaintiff brings both contract claims and fraud claims. On September 6, 2010, Plaintiff, a citizen of Kuwait entered in an "Escrow/Subscription Agreement" (the "Agreement") with Defendants ActiveCare and ADP. Under the agreement, Plaintiff invested one million dollars in ActiveCare, a corporation with a principal place of business in Orem, Utah, in exchange for one million Common Shares of ActiveCare.[4] The Agreement had a repurchase option that required ADP to repurchase the Common Shares at $1.00 each. ("Section 2(b)" or the "Repurchase Option").[5]

At the end of six months, Plaintiff alleges he notified Defendants that he had elected to exercise Section 2(b) but was encouraged to allow additional time for ActiveCare to improve its financial condition before exercising his option.[6] Allegedly, Defendants misrepresented the financial stability of ActiveCare and represented that Plaintiff's investment would be profitable if he would allow additional time for ActiveCare to continue to improve.[7] Plaintiff allegedly relied on these misrepresentations about the then current value of ActiveCare in his decision not to exercise his Repurchase Option.

Plaintiff reiterated his decision to exercise his Repurchase Option via an email to Dalton on December 6, 2011. In response, Dalton, allegedly on behalf of ActiveCare, ADP, and himself, individually, represented that Plaintiff's investment would be returned via wire transfer.[8] But then Defendants made additional misrepresentations and ActiveCare did not

---

[4] Docket no. 33, at ¶ 14.

[5] *Id.*

[6] *Id.* at ¶ 19.

[7] *Id.* at ¶ 20.

[8] *Id.* at ¶ 22.

return Plaintiff's investment as Dalton promised, nor did ADP repurchase the Common Stock as required by the Repurchase Option.[9] A number of exchanges allegedly occurred between Plaintiff and Defendants, talk of an additional investment possibility at the tune of $1,500,000 was discussed, but never occurred. Ultimately a reverse stock split for ActiveCare common stock occurred, converting Plaintiff's million shares into 100,000 shares, allegedly devaluing Plaintiff's investment.[10] This Court had previously dismissed without prejudice Plaintiff's fraud claims for not adhering to the requirement that Plaintiff must plead fraud with particularity but allowed Plaintiff to re-plead.[11] Before the Court is Defendants renewed Motion to Dismiss, seeking dismissal of counts 3 through 7, the fraud and conspiracy to commit fraud claims.

## STANDARD

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules, Plaintiff's "well-pled factual allegations [are viewed] in the light most favorable to the plaintiff."[12] The purpose of a 12(b)(6) motion is to determine whether a party's claim for relief is formally sufficient.[13] In order to survive a Rule 12(b)(6) motion to dismiss, plaintiffs must "state a claim upon which relief can be granted." To do so, plaintiffs must plead both a legitimate legal theory and "enough factual matter, taken as true, to make [their] claim to relief . . . plausible on its face."[14]

---

[9] *Id*. at ¶ 23.

[10] *Id*. at ¶¶ 24–48.

[11] *Al-Fouzan v. Activecare, Inc.*, 2016 WL 1092495 at *4 (D. Utah, March 21, 2016).

[12] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citing *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir 2005)).

[13] *See Sutton v. Utah State Ch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[14] *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In essence, a plaintiff must offer sufficient factual allegations to "raise a right to relief above the speculative level."[15] "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[16] Therefore, in assessing a motion to dismiss, a court should disregard conclusory statements of law, even if they are couched as facts, and then consider whether the remaining specific factual allegations, if presumed to be true, plausibly provide a claim that the defendant is liable.

## ANALYSIS

Defendants' Motion to Dismiss seeks dismissal of counts three (Fraud against ActiveCare), four (Fraud against ADP), five (Fraud against Dalton), six (Fraud against 4G), and seven (Conspiracy to Commit Fraud).

### 1. Fraud against ActiveCare and ADP

Defendants first argue that Plaintiff's fraud claims against ActiveCare and ADP (Plaintiff, ActiveCare, and ADP collectively "the contracting parties") should be dismissed under the economic loss doctrine. This Court previously held that Plaintiff's fraud claim should survive the motion to dismiss in spite of the economic loss rule, but Defendant's seeks reconsideration of that holding.[17]

The economic loss doctrine is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical

---

[15] *Twombly*, 550 U.S. at 555.

[16] *Iqbal,* 556 U.S. at 679.

[17] Docket no. 38, at 3 N. 3.

harm by imposing a duty of reasonable care."[18] "In Utah, the economic loss doctrine bars all tort claims that are not based on a duty independent of any contractual obligations between the parties."[19]

This Court previously found that Plaintiff has "asserted a proper tort law claim based upon Defendants' conduct post-agreement."[20] However, the parties had not specifically briefed the economic loss doctrine as regards post-agreement conduct. Now, being fully apprised on the governing law, the Court adopts Defendants' view.

The "economic loss doctrine bars all tort claims seeking recovery for economic losses when the claims are not based on a duty independent of the contractual obligations between the parties."[21] Once there is a contract "[a]ll contract duties, and all breaches of those duties . . . must be enforced pursuant to contract law."[22] The economic loss doctrine allows parties to "allocate risks that may arise pre- or post-formation" and the doctrine applies "to conduct regardless of whether it preceded or post-dated the contract."[23]

As regards ADP and ActiveCare, Plaintiff does not plead a "recognized independent duty of care" separate and apart from that recognized as parties to the contract. Plaintiff alleges that Active Care and ADP failed to repurchase common stock from plaintiff, which breached

---

[18] *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC,* 2009 UT 65, ¶ 18, 221 P.3d 234, 242 (citing *SME Indus., Inc. v. Thompson, Ventulett, Stainback & assocs., Inc.*, 2001 UT 54, ¶ 32, 28 P.3d 669

[19] *Associated Diving & Marine Contractors, L.C. v. Granite Const. Co.*, No. 2:01CV330 DB, 2003 WL 25424908, at *4 (D. Utah July 11, 2003) (citing *Town of Alma v. Azco Constr. Inc*., 10 P.3d 1256 (Colo.2000), *Harmansen v. Tasulis*, 2002 UT 52, 48 P.3d 235, *Grynberg v. Questar Pipeline Co*., 70 P.3d 1, 469 Utah Adv. Rep. 13, 20 (Utah 2003).

[20] *Al-Fouzan v. Activecare, Inc*., 2016 WL 1092495 at *4 (D. Utah, March 21, 2016).

[21] *Anapoell v. Am. Express bus. Fin. Corp*., No. 2:07-CV-198-TC, 2007 WL 4270548, at *6 (D. Utah Nov. 30, 2007).

[22] *Reighard v. Yates*, 2012 UT 45, ¶ 21, 285 P.3d 1168.

[23] *Donner v. Nicklaus*, 778 F.3d 857, 873–74 (10th Cir. 2015).

*contractual* duties.  ADP and ActiveCare cannot therefore sustain a fraud claim for a *breach* of the agreement between the contracting parties.

> "Contractual duties exist by mutual agreement of the parties, while tort duties exist by imposition of society; the modern focus is not on the harm that occurs but instead is on the source of the duty that was breached. . . . [O]nce there is a contract, any tort claim must be premised upon an independent duty that exists apart from the contract. *All contract duties, and all breaches of those duties—no matter how intentional—must be enforced pursuant to contract law.*"[24]

For the foregoing reasons, the Court will dismiss the fraud claims against ActiveCare and ADP.  Counts three and four will therefore be dismissed.

**2.  Fraud Against Dalton and 4G**

**a.  The fraud claims against 4G and Dalton are properly pled under Rule 8.**

Defendants argue that fraud claims against 4G fail because 4G did not make any representations to Plaintiff.  Moreover Defendants argue that even if 4G and Dalton made misrepresentations, those misrepresentations did not cause Plaintiff's damages because Plaintiff's damages are not independent of his damages under the contract between him and ActiveCare and ADP.

In Utah, to allege a claim of fraud, a plaintiff must demonstrate the following: "(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting

---

[24] *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 43, 70 P.3d 1, 11

reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage."[25]

Plaintiff alleges that Dalton and 4G made a number of misrepresentations about the *then present* value of ActiveCare, and the return Plaintiff would make on his investment if he would refrain from exercising his options under the contract.[26] These misrepresentations were allegedly made knowing they were false with the purpose of convincing Plaintiff to refrain from exercising his options under the agreement, which he allegedly refrained from doing. As a result ADP did not purchase Plaintiff's stock at $1.00 per share, and plaintiff sustained damages.

To begin, Plaintiff's claims against Dalton and 4G are not barred by the economic loss rule. Dalton and 4G were not parties to the agreement between Plaintiff and ActiveCare and ADP. As such, the Court finds that their personal participation in the fraud arises outside of the contract between the contracting parties.

Defendants argue that Plaintiff could not have reasonably relied on the alleged misrepresentations because those representations were made after Plaintiff invested in ActiveCare. While the post-contract misrepresentations by Dalton and 4G could not have causally influenced Plaintiff's investment decision (whether to enter into the contract with ADP and ActiveCare in the first place), these misrepresentations can, and allegedly did influence whether Plaintiff would utilize his repurchase options under the contract with ADP and ActiveCare. The court finds no distinction between being induced to act and being induced to refrain from acting in terms of pleading the elements of fraud.

---

[25] *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, at n. 38, 201 P.3d 966, at 977 n. 38 (quoting *Dugan v. Jones*, 615 P.2d 1239, 1246 (Utah 1980)).

[26] Docket no. 33 at ¶ 87(a–q) and ¶ 99(a–l).

Finally, Defendants argue even if Plaintiff relied on alleged misrepresentations, the misrepresentations could not have caused Plaintiff's alleged damages. Defendants argue that because Plaintiff invested $1,000,000 in ActiveCare pursuant to a contract with ActiveCare and ADP, Plaintiff must recover this money solely through his breach of contract claim.

This argument puts the cart before the horse.  The Court has yet to determine whether there is a binding agreement between the contracting parties and if there is, the terms of that agreement have not yet been interpreted.  Indeed, it is plausible that Plaintiff suffered damages even if there were not a technical breach of the underlying agreement between the contracting parties.  If that were to be the case, then 4G and Dalton's misrepresentations could have caused Plaintiff's damages by inducing him not to exercise his rights under the contract with third parties—even if no breach of contract occurred.  At that point, the appropriate legal issue would be to determine whether Plaintiff acted reasonably by not exercising his rights under the contract with ADP and ActiveCare.  But questions of reasonableness are not to be decided at this stage in the litigation.  Given the foregoing, the Court finds that Plaintiff has properly pled a cause of action against Dalton and 4G under Rule 8.

**b.  The Fraud claims against Dalton and 4G are properly pled under Rule 9(b).**

Having determined that the fraud claims against 4G and Dalton are properly pled under Rule 8, the Court must still look at the allegations against each entity to see if the claims are properly pled under Rule 9(b).

In the fraud context, Rule 9(b) requires that "individual plaintiffs [to] identify particular defendants with whom they dealt directly"[27] and include "the who, what, when, where, and how,"[28] of the alleged fraud. In considering the allegations of the complaint, along with the allegations of alter ego, the Court finds that Plaintiff has pled a fraud cause of action against Dalton and 4G under both Rule 8 and Rule 9(b).

Plaintiff alleges multiple misrepresentations by 4G, and Dalton personally. Plaintiff alleges that 4G and Dalton misrepresented the financial condition of ActiveCare and 4G. Plaintiff also alleges that Dalton and 4G represented that Plaintiff's investment would be backed by the assets of ActiveCare, which was experiencing "exponential growth" and that the Plaintiff's investment would be repurchased by Defendants. 4G and Dalton allegedly misrepresented quarterly revenues and net income of 4G.[29] These misrepresentations were allegedly made knowing they were false. Defendants intended that Plaintiff would rely on the statements and be induced not to exercise his rights under the agreement between Plaintiff and ActiveCare and ADP. Plaintiff allegedly relied on the statements of ActiveCare's financial wellbeing, which caused Plaintiff damages. The Court therefore finds that Plaintiff has properly pled a cause of action against Dalton and 4G under Rule 9(b). Given the foregoing, the Court DENIES Defendants' motion to dismiss counts 5 and 6 of the complaint. The motion to dismiss counts five[30] and six are therefore DENIED.

---

[27] *Arena Land & Inv. Co. v. Petty*, 906 F. Supp. 1470, 1476 (D. Utah 1994).

[28] *Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 19, 290 P.3d 930, 937.

[29] Docket no. 33, at ¶ 65(i).

[30] Fraud against Dalton was erroneously labeled Count 3 in the Amended Complaint, but should have been labeled Count 5.

### 3. Conspiracy to Commit Fraud

The parties agree that the conspiracy to commit fraud claim is dependent on the underlying alleged fraud and cannot stand alone. The Court therefore lets stand the civil conspiracy claim against Dalton and 4G but dismisses the same against ADP and ActiveCare.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1) Defendants' Motion to Dismiss[31] is GRANTED IN PART

    a. Count Three of the Amended Complaint (Fraud against ActiveCare) is DISMISSED.

    b. Count Four of the Amended Complaint (Fraud against ADP) is DISMISSED.

    c. Count Seven of the Amended Complaint (Conspiracy to Commit Fraud) is DISMISSED as regards ActiveCare and ADP but will proceed against 4G and Dalton.

All other relief requested is hereby DENIED.

IT IS SO ORDERED this 6th day of September, 2016.

*[signature: Brooke C. Wells]*

Brooke C. Wells
United States Magistrate Judge

---

[31] Docket no. 38.